tt

**E-FILED on** __4/29/2011__

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

<table>
<tr><td>1777 LAFAYETTE PARTNERS, a California Limited Partnership, ERIC WILLIS, an individual, TOM BURNS, an individual, and STEVEN WHEELWRIGHT, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>GOLDEN GATE INSURANCE COMPANY, PEERLESS INSURANCE COMPANY, and DOES 1 to 10,<br><br>Defendants.</td><td>No. C-10-01863 RMW<br><br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT<br><br>**[Re Docket Nos. 32, 39, and 46]**</td></tr>
</table>

Plaintiffs 1777 Lafayette Partners ("1777 Lafayette Partners"), Eric Willis, Tom Burns, and Steven Wheelwright seek summary judgment as to Peerless Insurance Company's ("Peerless'") duty to defend them from construction defect claims asserted in *Walnut Factory Owners Association v. Walnut Factory LLC et al.* (Santa Clara county Superior Court case No. 1-07-CV100339) (the "Defect Action"). At the same time, Peerless brings its motion for summary judgment on the basis that plaintiffs' claims for breach of contract, breach of the covenant of good faith and fair dealing and declaratory relief fail because, as a matter of law, Peerless has no duty to defend plaintiffs. On April 29, 2011, the court held a hearing to consider the parties' motions. Having considered the

**United States District Court**<br>For the Northern District of California

United States District Court
For the Northern District of California

1  papers submitted by the parties and the arguments of counsel, and for the reasons set forth below,

2  the court grants defendant's motion for summary judgment and denies plaintiffs' motions for

3  summary judgment.

## I.  UNDISPUTED FACTS

### A.    Project Development

6      The parties essentially agree that the material facts are undisputed.  1777 Lafayette Partners

7  is a single asset limited partnership created in April 1999.  Willis Decl. ¶ 3.  Eric Willis and Tom

8  Burns were general partners and Steven Wheelwright served as a limited partner.  Willis Decl. ¶¶ 1

9  & 4.

10     In 1999, 1777 Lafayette Partners purchased an abandoned walnut processing factory located

11  at 1777 Lafayette Street, Santa Clara, California (the "Project"), for the purpose of converting the

12  Project into a living and work units.  Willis Decl. ¶ 3.  As general partners, Eric Willis and Tom

13  Burns were involved in the construction of the Project.  Willis Decl. ¶ 7  As a limited partner, Steven

14  Wheelwright was not involved in the day to day operations of the project.  Willis Decl. ¶ 8.

15     1777 Lafayette Partners developed the Project into a rental property from 2000-2001 and

16  then held the property for rental.  Plaintiffs specify that they rented some, but not all of the

17  individual units and that common areas were never rented or occupied.  The rent rolls show an

18  occupancy rate for the property of 85-95% between 2002 and 2004.  Tucker Decl. Exhs. M, N, O, P;

19  Willis Decl. Ex. A.  From 2002 to 2003, the Project produced total rental income of $1,952,133.30.

20  Tucker Decl. Exh. M.

21     Eventually, 1777 Lafayette Partners sold the Project to Wolff Enterprises LLC.  The parties

22  entered into a Purchase and Sale Agreement on May 28, 2003.  Willis Decl. ¶ 11.  After three

23  amendments to the Purchase and Sale Agreement, the transaction closed on February 6, 2004 and

24  the Grant Deed was recorded on February 9, 2004.  Willis Decl. ¶¶ 19-20.  Wolff Enterprises LLC

25  then converted the rental units into condominiums.  Tucker Decl. Exh. Q.  While plaintiffs assert

26  that 1777 Lafayette Partners' transfer of its interest in the property could have occurred as early as

27  May 28, 2003, it is undisputed that escrow closed in the sale on February 6, 2004.  Dkt. No. 54 at 2.

28  The Purchase and Sale Agreement also addressed the rented apartments within the Project and the

United States District Court
For the Northern District of California

related obligations of 1777 Lafayette Place to both the buyer and the tenants.  For example, paragraph one of the Purchase and Sale Agreement notes that "[t]he sale and purchase of Property pursuant to this Agreement shall also include the assignment by Seller to Buyer of All Leases . . . ." Tucker Decl Exh. Q at ¶ 1.

### B.     The Defect Action

On December 5, 2007, The Walnut Factory Owners Association ("Owners Association") filed suit for construction defects against Wolff Enterprises and other defendants involved in the Project.  Request for Judicial Notice ("RJN") Exh. 2.[1]  1777 Lafayette Partners was added to the Defect Action on July 10, 2009.  RJN Exh. 3.  On May 10, 2010, Eric Willis and Tom Burns were named as defendants in the Defect Action as general partners in 1777 Lafayette Partners.  RJN Exh. 4.  On November 16, 2010, Steven Wheelwright was named as a defendant in the Defect Action as a limited partner of 1777 Lafayette Partners.  RJN Exh. 5.   The Defect Action alleges causes of action of 1) strict liability; 2) breach of express warranties; 3) breach of implied warranties; 4) negligence; 5) breach of fiduciary duty; 6) breach of declaration of covenants, conditions and restrictions; 7) alter ego liability; and 8) negligent misrepresentation.  RJN Exh. 2.  However, only the fourth cause of action for negligence is pled against the named plaintiffs.  RJN Exh. 2.  There are no specific allegations against 1777 Lafayette Partners, nor any of its partners.  RJN Exh. 2 at 12:9-15.

The Owners Association alleges a variety of "defective conditions in the real property and structures thereon, including without limitation, roofs, exteriors, windows, electrical, pluming, and mechanical components and systems."  RJN Exh. 2 at ¶ 18.  The Owners Association seeks damages for costs of all needed repairs to the real property, all repairs made to date, all lost rents, relocation costs, and the costs of expert investigation.  RJN Exh. 2 at ¶ ¶ 27,2.

### C.     The Peerless Policies

Peerless' first issued commercial policy (policy No. CVP9610734) took effect on August 1, 2002 ("the 2002 Policy"), after construction was completed and the units held for rent.  Bily Decl. ¶ 4; RJN Ex. 1 ¶¶ 17-18.  1777 Lafayette Partners was a named insured on the 2002 Policy.  Bily

---

[1]  Neither party objects to the requests for judicial notice.  Accordingly, the court hereby takes judicial notice as requested.

United States District Court
For the Northern District of California

1  Decl. ¶ 4.  The 2002 Policy was subsequently renewed from August 1, 2003 to August 1, 2004 ("the

2  2003 Policy").  Bily Decl. ¶ 5.  In the 2003 Policy, the "named insured schedule" listed 1777

3  Lafayette Partners as a named insured.  Bily Decl. ¶ 5.  1777 Lafayette Partners was a named insured

4  on the August 1, 2004 to August 1, 2005 renewal Policy No. CBP9610734.  Bily Decl. ¶ 6, Exh. C.

5  The August 1, 2004 to August 1, 2005 policy was renewed for consecutive annual policy periods

6  through August 2, 2007, but 1777 Lafayette Partners was not a "named insured" on the policy afer

7  August 1, 2005.  Bily Decl. ¶ 7.

8  **1.    Definition of Insured, Named Insured and "You"**

9  In each of the policies, the first page of the Commercial General Liability Coverage Form

10  states:

11  Throughout this policy the words "you" and "your" refer to the Named Insured shown
   in the Declarations, and any other person or organization qualifying as a Named

12  Insured under this policy . . . . The word "insured" means any person or organization
   qualifying as a such under Section II-Who Is An Insured.

13

14  Bily Decl. Exh. A, P-000106; Exh. B, P-00270; Exh. C, P-00468.

15  Section II - Who Is An Insured states the following:

16  If you are designated in the Declarations as

17  . . .

18  (B) A partnership or joint venture, you are insured. Your members, your
   partners, and their spouses are also insureds, but only with respect to the conduct of

19  the business."

20  Bily Decl. Exh. A, P-00112; Exh. B, P-00276; Exh. C, P-00474.

21  **2.    Liability Coverage**

22  The Peerless Policies provide Bodily Injury and Property Damage Liability coverage which

23  states :

24  1. Insuring Agreement

25  a.  We will pay those sums that the insured becomes legally obligated to pay as
   damages of "bodily injury" or "property damage" to which this insurance applies.

26  We will have the right and duty to defend the insured against any "suit" seeking those
   damages.  However, we will have no duty to defend the insured against any "suit"

27  seeking damages for "bodily injury" or "property damage" to which this insurance
   does not apply.  We may, at our discretion, investigate any "occurrence" and settle

28  any "suit" that may result . . . .

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTIONS FOR
SUMMARY JUDGMENT—No. C-10-01863 RMW
JLR                                                                                          4

Bily Decl. Exh. A, P-00106; Exh. B, P-00270; Exh. C, P-00468.

The Policies also contain the following exclusions:

2.  This insurance does not apply to:

. . .

J. Damage to Property

"Property damage" to:

(1) property you own, rent or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

. . .

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Bily Decl. Exh. A, P-00118-119; Exh. B, P-00282-283; Exh. C, P-00471-472.

### 3.     Designated Premises

Beginning with the 2003 Policy, liability coverage is limited to liability arising out of specific property.  The 2003 policy includes the following endorsement:

LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance applies only to "bodily injury", "property damage", "personal and advertising injury" and medical expenses arising out of:

1.  The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or

2.  The project shown in the schedule

SCHEDULE

Premises:
LOC. #1 to LOC. #11 PER LOCATION SCHEDULE

Bily Decl. Exh. B, P-00263-64; Ex. C, P-00403-404.

The Project was designated location number 7 on the 2003 Policy.  Bily Decl. Exh. B, P-00263-264.  However, the Project (location 7) was removed as a designated premises by

United States District Court
For the Northern District of California

endorsement with a change effective date of February 9, 2004.  Bily Decl. Exh. B, P-00152.  1777

Lafayette Partners received a refund of $8,050.00.  Bily Decl. Exh. B, P-00152.

### D.   Tenders of Defense to Peerless and Declinations of Coverage

On or about October 26, 2009, plaintiff 1777 Lafayette Partners tendered its defense to

Peerless in the Defect Action.  Creeden Decl. Exh. D.  On March 29, 2010, Peerless sent a letter

denying coverage to 1777 Lafayette Partners.  Creeden Decl. Exh. F.  Peerless subsequently denied

coverage to Tom Burns, Eric Willis, and Steven Wheelwright as well.

### E.   Procedural History

Plaintiff 1777 Lafayette Partners filed its complaint against defendant Peerless on April 9,

2010 in the Superior Court of the State of California, County of Santa Clara.  Peerless timely

removed the complaint to this court on April 29, 2010 on the basis of diversity jurisdiction.  Peerless

filed an Answer on May 6, 2010.  On January 4, 2011, the First Amended Complaint added Eric

Willis and Tom Burns as plaintiffs.  Plaintiffs filed a Second Amended Complaint on February 24,

2011 adding Steven Wheelwright as a plaintiff and adding a declaratory relief cause of action.

Plaintiffs, together and individually, seek summary judgment on their declaratory relief–duty to

defend cause of action, as well as partial summary judgment on their breach of contract claims

establishing Peerless' breach by failing and refusing to honor its defense obligation.  Likewise,

Peerless seeks summary judgment against plaintiffs as to each cause of action.

## II.  ANALYSIS

### A.   Summary Judgment

Upon a showing that there is no genuine issue of material fact as to particular claims or

defenses, the court will grant summary judgment in the moving party's favor upon all or any part

thereof.  Fed. R. Civ. Pro.56(a).  The moving party has the initial burden of demonstrating the

absence of a genuine issue of material fact.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

Once the moving party presents evidence, which, if uncontroverted, would entitle that party to a

directed verdict at trial, the burden then shifts to the non-moving party to set forth specific material

facts demonstrating that there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 250 (1986).

1

2          **B.       Duty to Defend 1777 Lafayette Partners**

3          Plaintiffs contend that Peerless has a duty to defend because the Owned Property exclusion

4    does not apply after the date of sale and there is a possibility that damages occurred after sale and

5    prior to February 9, 2004 when the policy no longer covered liability arising out of the Project.

6    Plaintiffs also argue that the Owned Property exclusion is ambiguous because it can be interpreted to

7    apply only during the time the insured owned the property or to property the insured ever owned.

8          Peerless argues that the Designated Premises endorsement dated February 9, 2004 clearly

9    removed the Project from coverage.  Moreover, Peerless contends that the Owned Property

10   exclusion precludes coverage after the Project was sold.  Peerless also contends that even if the

11   Owned Property exclusion does not apply after 1777 Lafayette Partners no longer owned the

12   property, the Alienated Premises exclusion applies thereafter to exclude coverage for the alleged

13   property damage after sale of the property.

14         Section 2j(2) of the Policies exclude coverage for property damage to "premises you sell,

15   give away or abandon, if the 'property damage' arises out of any part of those premises."  This is

16   commonly referred to as an "alienated premises exclusion."  There is, however, a limited exception

17   to exclusion 2j(2): the exclusion does not apply "if the premises are 'your work' and were never

18   occupied, rented or held for rental by you."  In this case, it is undisputed that the property was held

19   out for rental, and actually rented, for three years prior to its sale.  Accordingly, even if there is some

20   period of time under the 2003-2004 policy term during which the property was no longer owned by

21   1777 Lafayette Partners but the subject property was a designated premise for liability coverage

22   (three days), exclusion 2j(2) precludes coverage.

23         Plaintiffs argue that the Alienated Premises exclusion provision should not apply and that

24   they should be treated as developers who developed and sold a real estate project.  However, courts

25   have typically treated developers/renters as falling under alienated premises exclusions.  *See*

26   *Prudential-LMI Commercial Insurance Co. v. Reliance Insurance Co.*, 22 Cal. App. 4th 1508, 1512

27   n.2 (1994) (noting that where "the insured built an apartment complex, operated and managed the

28

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTIONS FOR
SUMMARY JUDGMENT—No. C-10-01863 RMW
JLR                                                          7

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1    complex as a landlord for four years, then sold it . . . the insured would not have been entitled to

2    coverage because the property had either been 'rented' or 'held for rental'").

3         Plaintiffs further contend that because the Project was never completely rented in its entirety,

4    it was not rented or held for rental.  Plaintiffs point to the common areas outside the individual units

5    that were never rented.   But plaintiffs overlook that the occupancy rates for livable units were

6    between 85-95%, producing close to two million dollars in rental income from 2002 through 2003.

7    *See Travelers Prop. Cas. Co. of Am. v. Alder Grove, LLC*, 2009 U.S. Dist. LEXIS 42360 at *6-7

8    (E.D. Cal. May 19, 2009).  Plaintiffs' interpretation of the Alienated Premises exclusion as requiring

9    every common space to be rented is an unreasonable interpretation of "held for rental."

10        Plaintiffs also argue that the Alienated Premises exclusion would vitiate the plaintiffs'

11   Products-Completed Operations coverage.  Plaintiffs overlook that the Products-Completed

12   Operations coverage for liability for property damage is not a separately granted coverage, rather, it

13   carves out exceptions to exclusions.  For example, exclusion 2j specifically states that subparagraphs

14   (6) does not apply to "property damage" included in the "products-completed operations hazard."

15   Moreover, exclusion 2(l) also specifically invokes the Products-Completed Operations coverage.

16   Bily Decl. Exh.A, P-00118-119; Exh. B, P-00282-283; Exh. C, P-00471-472.  That the Products-

17   Completed Operations coverage is not available when the named insured owns the property, and

18   when the named insured sells the property after having held it for some time for rent does not render

19   the coverage meaningless; it simply does not apply to those circumstances, as present here.

20        Plaintiffs further contend that the Designated Premises endorsement is ambiguous.  However,

21   the Project was clearly removed from the schedule effective February 9, 2004.  The plain language

22   of the Designated Premises endorsement states at the outset that "**This endorsement modified**

23   **insurance provided under the following: COMMERCIAL GENERAL LIABILITY**

24   **COVERAGE PART.**"  Plaintiffs give no basis for an objectively reasonable belief that this

25   endorsement did not affect general liability coverage or third party liability coverage for property

26   damage.  Plaintiffs rely on the declaration of Eric Willis to support their argument that they had an

27   expectation of coverage for third party liability claims related to the Project after Eric Willis

28   removed it from the Policies.  But when the contract language is unambiguous, parol evidence such

1    as the declaration of Eric Willis is irrelevant and inadmissable.[2]  *Montrose Chem. Corp. v. Admiral*

2    *Ins. Co.*, 10 Cal. 4th 645, 666-667 (1995) ("If the meaning a layperson would ascribe to the language

3    of a contract of insurance is clear and unambiguous, a court will apply that meaning.").  Moreover,

4    1777 Lafayette Partners actually received a refund of $8050.00 because the removal resulted in *less*

5    coverage.

6          As a matter of law, Peerless has no duty to defend 1777 Lafayette Partners.

7          **C.      Duty to Defend Individual Plaintiffs**

8          The individual plaintiffs agree that they are not the "you" for purposes of the exclusions.

9    However, the individual plaintiffs argue that the exclusions that refer to "you" do not affect coverage

10   for them at all as insureds.  But this interpretation would result in the additional insureds having

11   more coverage under the Policies than the named insured.  *See Travelers Prop. Cas. Co. of Am. v.*

12   *Alder Grove, LLC*, 2009 U.S. Dist. LEXIS 82415 at *5-*6 (E.D. Cal. Sept. 10, 2009) (holding that

13   because an alienated premises exclusion applied to the named insured, it also applied to the insured).

14   Moreover, the Policies specifically state that the individual partners comprising 1777 Lafayette

15   Partners are "insureds, but only with respect to the conduct of the business" of the named insured

16   partnership.

17         Plaintiffs rely on *Md. Casualty Co. v. Reeder*, 221 Cal. App. 3d 961, 977 (1990) and *Smith*

18   *Real Estate v. Continental Casualty Co.* 67 Cal. App. 4th 406, 416 (1998) for the proposition that an

19   insured is not an owner, and the Owned Property Exclusion and Alienated Premises Exclusion do

20   not apply.  But each of these cases involve multiple named insureds.  They do not discuss or

21   consider the question of how exclusions apply to an additional insured when the named insured

22   providing their insurance is excluded from coverage.  Moreover, *Minkler v. Safeco Insurance Co.* 49

23   Cal. 4th 315 (2010) is inapposite because that case dealt with a policy where the coverage and

24   exclusions applied to "an insured," not just the named insured.

25

26

27   _____

28   [2]  Peerless moves to strike the declaration of Eric Willis insofar as it reflects his intentions and
     expectations when he removed the Project from the schedule.  Because there is no ambiguity in the
     endorsement, the declaration is not relevant.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTIONS FOR
SUMMARY JUDGMENT—No. C-10-01863 RMW
JLR                                                  9

**United States District Court**
For the Northern District of California

1    So too here, Peerless has no duty to defend the individual plaintiffs.  Accordingly, defendant

2  is entitled to summary judgment as to the first, second and third causes of action for breach of

3  contract.  Moreover, there is no coverage for any plaintiff in the Second Amended Complaint.

4    **D.    Breach of the Implied Covenant of Good Faith and Fair Dealing**

5    Breach of the implied covenant of good faith and fair dealing can only give rise to tort

6  liability if there is coverage under the policy.  If there is no coverage, there cannot be any bad faith

7  as a matter of law.  *Waller v. Truck Insurance Exchange*, 11 Cal. 4th 1 (1995).  Because there is no

8  coverage in the instant action, there is no breach and thus no bad faith.

9                **III.  ORDER**

10    For the foregoing reasons, the court grants defendants motion for summary judgment and

11  denies plaintiffs motions for summary judgment.

16  DATED:    04/29/2011                    _Ronald M Whyte_

17                            RONALD M. WHYTE
                            United States District Judge

United States District Court
For the Northern District of California